IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LORETTA ALEXANDER                                                              PLAINTIFF

V.                          CASE NO. 4:20-CV-541-BD

PINE BLUFF SCHOOL DISTRICT                                  DEFENDANT

**ORDER**

Plaintiff Loretta Alexander, a current employee of Defendant Pine Bluff School District (PBSD), claims that the PBSD, through its high school principal Dr. Michael Nellums, retaliated against her for reporting sexual harassment, in violation of Title VII of the Civil Rights Act of 1964 and the Arkansas Civil Rights Act of 1993 (ACRA). (Doc. No. 9)

PBSD has moved for summary judgment on all claims. (Doc. No. 22) Ms. Alexander has responded (Doc. No. 28); and PBSD has replied. (Doc. No. 31; Doc. No. 35) For the reasons explained below, PBSD's motion for summary judgment must be granted and the case dismissed, with prejudice.[1]

**I.**     **Undisputed Factual Background:**[2]

Plaintiff Loretta Alexander began working as a teacher at Pine Bluff High School in 1987. (Doc. No. 31-1, pp. 10, 15) For many years, she taught Algebra II and Algebra III to juniors and seniors in the high school's Patterson building. (Doc. No. 31-1, pp. 15,

---

[1] The parties consented to the jurisdiction of a magistrate judge. (Doc. No. 16)

21) But after Dr. Michael Nellums was hired as the high school principal in 2012, Ms. Alexander's classroom and class assignments changed on several occasions. (Doc. No. 31-1, p. 7)

Shortly after arriving at Pine Bluff High School, Dr. Nellums removed Algebra III from Ms. Alexander's class schedule. (Doc. No. 31-1, p. 15) According to Ms. Alexander, the change was made because she was "failing too many seniors." (Doc. No. 31-1, p. 15)

In 2014, Ms. Alexander's daughter began working at Pine Bluff High School. (Doc. No. 31-1, p. 12) During a professional development day, Ms. Alexander observed Dr. Nellums "all up on" her daughter. (Doc. No. 31-1, p. 11) Ms. Alexander pulled Dr. Nellums aside "and told him he was getting a little bit too close [and] he needed to watch his mannerism with her [daughter]." (Doc. No. 31-1, pp. 11–12) Then, in May 2016, a fellow teacher told Ms. Alexander that "she did not want to meet with [Dr. Nellums] alone due to his physical touching." (Doc. No. 22-2; Doc. No. 31-1, pp. 10–11) Ms. Alexander reported Dr. Nellums's conduct to Dr. Wilson[3] on multiple occasions. (Doc. No. 31-1, p. 11)

### A. 2016–2017 Class Reassignment

For the 2016–2017 school year, Ms. Alexander's class duties were reassigned. Instead of teaching Algebra II to juniors and seniors, she was assigned to teach Algebra I

---

[3] Dr. Wilson was apparently in some supervisory position at the PBSD during the relevant time period, but the record does not reveal what position Dr. Wilson held.

to ninth graders. And her classroom was moved from the Patterson building, where upper-level students attend classes, to the Trice building, where ninth grade students attend classes. (Doc. No. 31-1, p. 18; Doc. No. 31-2, p. 26)

According to Ms. Alexander, she did not find out that her classroom was being moved until right before classes began in August. Her assigned classroom at Trice was dubbed "the dungeon" and was considered a tripping hazard. (Doc. No. 31-1, p. 13; Doc. No. 22-5, p. 6) After complaining about her classroom assignment, Ms. Alexander was allowed to pick a new classroom in the Trice building. (Doc. No. 31-1, p. 14)

Ms. Alexander alleges that Dr. Nellums considered the move, both in class subject and room location, a demotion. (Doc. No. 31-1, p. 15) She thought Dr. Nellums was attempting to get her to retire because ninth graders were "rowdier" than the students she had been teaching. (*Id.*) According to Alesia Smith, the school district's improvement officer at the time, Ms. Alexander was reassigned because the ninth-grade students had been through several teachers in recent years, and the students needed a strong teacher, such as Ms. Alexander, to teach them. (Doc. No. 31-2, p. 7)

B. **Sexual Harassment Lawsuit**

On September 22, 2016, Ms. Alexander's daughter filed a Title VII sexual discrimination claim against Dr. Nellums and the Pine Bluff School District. Complaint, *Alexander v. Pine Bluff School District No. 3*, No. 5:16-CV-300-BSM (E.D. Ark. Sept. 22, 2016). During the 2017–2018 school year, while the lawsuit was pending, Dr. Nellums worked in the PBSD maintenance and transport department. (Dox. No. 31-1, pp.

3

12–13) Ms. Alexander put in a request with the interim high school principal to allow her to teach Algebra II again. (Doc. No. 31-1, p. 18)

On April 17, 2018, the lawsuit settled, and word began to spread that Dr. Nellums was going to be reinstated as principal of Pine Bluff High School. (Doc. No. 22-4; Doc. No. 31-1, p. 13) In response, Ms. Alexander sent an email to the Pine Bluff school board outlining issues with Dr. Nellums and requesting that she be placed under a new principal. (Doc. No. 29-5, pp. 13–16)

Despite her requests, Dr. Nellums returned as principal of the high school for the 2018–2019 school year, and Ms. Alexander was reassigned to teach Algebra I in the Trice building. (Doc. No. 31-1, p. 18) Ms. Alexander's salary remained the same throughout all times relevant to her claims in this lawsuit. (Doc. No. 22-7, pp. 1–2)

### C. 2019–2020 Class Reassignment

In August 2019, Ms. Alexander received a notification by mail from a counselor informing her class that her teaching assignment would again be changed. (Doc. No. 31-1, p. 18) She was moved from teaching Algebra I to teaching Pre-Calculus, Calculus, and AP (Advanced Placement) Calculus. (*Id.*) Her classroom was moved from the Trice building back to the Patterson building. (*Id.*) Again, her salary was not affected by the change in course assignments. (Doc. No. 22-7, pp. 2–3)

Ms. Alexander was licensed to teach math classes from seventh to twelfth grades, but she felt that she did not have the training required by the AP College Board to teach

4

AP Calculus. (Doc. No. 31-1, p. 18) She also alleges that the last-minute assignment to AP Calculus caused her to work an additional three hours each day. (Doc. No. 29-9)

Shortly after the reassignment, Dr. Nellums sent an email notifying teachers that they could request a transfer or retire if they did not like their teaching assignments. (Doc. No. 31-1, p. 18) Although the email was addressed to all teachers, Ms. Alexander believes that the email was directed at her. (Id.)

On August 15, 2019, Ms. Alexander signed an "Additional Training Plan" from the Arkansas Department of Education, which gave her latitude to teach Pre-Calculus and AP Calculus on condition that she obtain required training to teach those subjects within three years. (Doc. No. 36) She completed the requisite training in August 2020. (Doc. No. 31-1, pp. 18, 20)

### D. EEOC Complaint and Federal Lawsuit

On October 24, 2019, Ms. Alexander filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) claiming that the PBSD, through Dr. Nellums, had retaliated against her from July 10 to August 30, 2019 for reporting sexual harassment and other instances of retaliation. (Doc. No. 22-2) She alleged that Dr. Nellums moved her classroom and assigned her to teach classes that "other teachers did not want to teach." (Id.) The EEOC issued a right-to-sue letter on January 9, 2020. (Doc. No. 2, p. 6) Ms. Alexander filed a complaint on April 8, 2020 in state court (Doc. No. 2); and PBSD removed the case to federal court, asserting federal-question jurisdiction (Doc. No. 1)

## II. Discussion:

### A. Summary Judgment Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows there is no real dispute about any fact important to the outcome of the case. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). As the moving party here, the PBSD bears the burden of producing admissible evidence showing that there is no real dispute about the facts. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*). If the PBSD comes forward with that evidence, Ms. Alexander must produce evidence to rebut the PBSD's evidence to avoid summary judgment. *Id.* Ms. Alexander cannot rest on the allegations in her complaint; she is obligated to produce admissible evidence showing that there is a genuine dispute that must be decided at a trial. See *Anderson*, 477 U.S. at 248–49; see also *Hartnagel v. Norman*, 953 F.2d 394, 395–96 (8th Cir. 1992).

### B. Failure to Exhaust Administrative Remedies

As an initial matter, it is important to clarify exactly which claims are properly before the Court. Throughout her complaint, deposition, and summary judgment response, Ms. Alexander alleges numerous retaliatory actions taken against her:

1. For the 2016–2017 school year, Dr. Nellums "demoted" her by changing her teaching assignment from Algebra II classes to Algebra I classes (Doc. No. 31, pp. 2–3; Doc. No. 31-1, p. 13);

2. For the 2016–2017 school year, Dr. Nellums moved her classroom from the Patterson building to the Trice "dungeon," without proper notice (Doc. No. 22-5, p. 6; Doc. No. 28, pp. 13–14);

3. In August 2018, Dr. Nellums rejected her request to return to teaching Algebra II[4] (Doc. No. 28, pp. 13–14; Doc. No. 31, p. 9);

4. For the 2019–2020 school year, Dr. Nellums changed her class schedule to Pre-Calculus, Calculus, and AP Calculus without proper notice or training (Doc. No. 29-9; Doc. No. 31-1, p. 18);

5. For the 2019–2020 school year, Dr. Nellums moved her classroom to the Patterson building without proper notice (Doc. No. 31-1, p. 14);

6. Dr. Nellums asked other teachers to "dig up" negative information about her (Doc. No. 31-1, p. 29);

7. Dr. Nellums told the Arkansas Department of Education that Ms. Alexander was having inappropriate relations with a school board member (Doc. No. 9, p. 3; Doc. No. 29-5, p. 14; Doc. No. 31-1, p. 29);

8. Dr. Nellums influenced other facility members to be rude to her (Doc. No. 31-1, p. 94);

9. Dr. Nellums refused to attend meetings with her (Doc. No. 9, p. 3); and

10. Dr. Nellums publicly stated that Ms. Alexander was a poor teacher (Doc. No. 9, p. 2).

Counsel for the PBSD argues that Ms. Alexander cannot bring any claim for actions occurring prior to 2019, because she failed to exhaust her administrative remedies for those claims with the EEOC. (Doc. No. 23, pp. 10–11) The school district further contends that Ms. Alexander improperly raises a "hostile work environment" claim

---

[4] Ms. Alexander also alleges in her summary judgment response that she was reassigned to teach a different subject in a different classroom in August 2018. (Doc. No. 28, p. 10) The record evidence does not support this allegation.

7

through her summary judgment response. (Doc. No. 28, p. 5; Doc. No. 31, p. 1) Ms. Alexander counters that the Court should consider all claims because "Plaintiffs may seek relief for any discrimination that is reasonably related to the substance of the allegations in the administrative charge." (Doc. No. 28, p. 2) (citing *Nichols v. Am. Nat. Ins. Co.*, 154 F.3d 875, 887 (8th Cir. 1998)).

Under Title VII, Ms. Alexander was obligated to file a timely charge with the EEOC before seeking relief in court. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012). In determining whether Ms. Alexander exhausted her administrative remedies, the distinction between claiming "hostile work environment" or "discrete act" of retaliation is critical. If Ms. Alexander is claiming a hostile work environment, "[she] need only file a charge within 180 days of *any* act that is part of the hostile work environment." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 920 (8th Cir. 2018) (internal ellipsis omitted) (emphasis added). If Ms. Alexander is bringing a discrete-act claim, she is obligated to bring separate EEOC charges for each discrete act. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d at 851 ("Each discrete act is a different unlawful employment practice for which a separate charge is required.")

Based on the wording of Ms. Alexander's EEOC charge and amended complaint, she brings a discrete-act claim. Her EEOC charge reads:

> I was hired in 1987 and my current position is math teacher. My daughter (also a teacher) filed a sexual harassment complaint against the principal and I also reported another teacher who told me she did not want to meet with him alone due to his physical touching. My daughter[']s suit was settled in 2018. The principal was reinstated in 2018. I requested a new principal, but

> he was placed back over me. In July 2019, he filed a slander/defamation suit against me and my daughter. In August 2019, he gave me classes other teachers did not want to teach and also moved my classroom.
>
> I have not been any reason [sic] as to why I[']m being treated this way, but I was told I could teach or retire.
>
> I believe I was moved out of my classroom and had classes assigned to me to teach that others did not want in retaliation for reporting sexual harassment and previous retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Doc. No. 22-2)

Ms. Alexander indicated that the earliest date of discrimination was July 10, 2019, and the latest date of discrimination was August 30, 2019. On her EEOC charge, she did not mark the box alleging that the discrimination was a "continuing action."

In her amended complaint, Ms. Alexander does not allege that she was subjected to a hostile work environment; nor does she otherwise put the PBSD on notice that she was bringing a claim of hostile work environment. (See Doc. No. 9) To the extent she is attempting to do in this lawsuit, that cannot be permitted. Ms. Alexander may not add a new claim at this late stage of the litigation. See *Winfrey v. City of Forrest City, Arkansas*, 882 F.3d 757, 758 (8th Cir. 2018) (rejecting plaintiff's attempt to add a race discrimination claim to her retaliation claim at summary judgment stage of the litigation). Because Ms. Alexander brings her Title VII retaliation claim based on discrete actions, she may only bring the claims she specifically alleged in her EEOC charge. She failed to administratively exhaust all other claims.

C.  **Title VII Retaliation**

In her amended complaint, Ms. Alexander claims that she was "demoted" in retaliation for complaining about Dr. Nellums's discriminatory conduct and for supporting her daughter's sexual harassment lawsuit. (Doc. No. 9 at ¶¶ 21–22, 24, 27–28, 30) Reading Ms. Alexander's amended complaint in conjunction with her EEOC charge, the only issue properly before the Court is whether the decision to change her classroom assignment from the Trice building to the Patterson building or the decision to change her teaching assignment from Algebra I to Pre-Calculus, Calculus, and AP Calculus was made in retaliation for engaging in constitutionally protected activity.[5]

Because Ms. Alexander does not present direct evidence of retaliation,[6] the claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042–43 (8th Cir. 2007). Under the *McDonnell*

---

[5] In her EEOC claim, Ms. Alexander also alleges that Dr. Nellums retaliated against her by filing a defamation lawsuit (Doc. No. 22-2), but she does not raise the issue in her amended complaint. (Doc. No. 9)

[6] Ms. Alexander claims that Dr. Nellums's email stating that teachers could "transfer or retire;" his verbal statement to Ms. Alexander that she could ask for a transfer; and his statement to the newspaper that he would get revenge, constitute direct evidence of retaliation. (Doc. No. 28, pp. 3–4) Setting aside admissibility issues, none of these statements show a specific link between Ms. Alexander's protected activity and the August 2019 teaching reassignment. Cf. *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011) (finding direct evidence where supervisor wadded up formal complaint and called it "total bullshit" immediately prior to firing plaintiff) and *Sellner v. MAT Holdings, Inc.*, 859 F.3d 610, 614 (8th Cir. 2017) (finding specific link where supervisor threatened to fire plaintiff for protected activity and did, in fact, fire plaintiff).

*Douglas* framework, Ms. Alexander has the initial burden of establishing a prima facie case of retaliation. *Id.* at 1043. If she does so, the burden shifts to the PBSD to articulate a legitimate, non-retaliatory reason for the classroom and teaching changes. *Id.* And then the burden shifts back to Ms. Alexander to show that the proffered reason was pretextual. *Id.*

To establish a prima facie case of Title VII retaliation, Ms. Alexander must show that she engaged in a protected activity; that PBSD engaged in conduct that a reasonable employee would find materially adverse; and that there was a causal connection between the two. *Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007), abrogated on other grounds by *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

The parties do not dispute that Ms. Alexander engaged in protected activity when she participated in her daughter's sexual harassment suit and reported Dr. Nellums's alleged misconduct to Dr. Wilson. See *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999) (an employee engages in a protected activity when she participates "in any manner in a Title VII investigation, proceeding or hearing") (cleaned up).

Assuming, without deciding, that last-minute classroom and teaching reassignments constitute materially adverse actions,[7] Ms. Alexander's retaliation claims

---

[7] Compare *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (reassignment to less desirable work duties can constitute materially adverse action in retaliation claim), with *Watson v. McDonough*, No. 19-3127, 2021 WL 1795803, at *3–4 (8th Cir. May 6, 2021) (inadequate training and assignment of additional duties did not establish prima facie retaliation claim).

still fail because she cannot establish a causal connection between her protected activity and the changes in her classroom or teaching assignments. Nor can she show that the PBSD's legitimate non-retaliatory reason was pretextual.

        1.       *Casual Connection*

Ms. Alexander has failed to establish a causal connection between her protected activity and the allegedly materially adverse action. "A gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive," and "given a delay of sufficient length, the causal nexus tends to evaporate." *Stewart*, 481 F.3d at 1044 (cleaned up).

Here, the protected activity was Ms. Alexander's participation in her daughter's harassment lawsuit that concluded in April 2018. The alleged materially adverse action—reassignment to teaching Pre-Calculus, Calculus, and AP Calculus on short notice—took place in August 2019. This *sixteen-month* gap fails to support a finding of causal connection.

And, assuming Ms. Alexander's email to the school board during the summer of 2018 rises to the level of protected activity, the year-long gap between the protected activity and the adverse action militates against finding a causal nexus. See *Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005) (no casual nexus where there was ten-month gap between the protected activity and the adverse action) and *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999) (four-month gap weakens inference of retaliation).

2. *Legitimate Non-Discriminatory Reason/Pretext*

Ms. Alexander's retaliation claim is further undercut because she cannot show that the PBSD's proffered legitimate reason for the class reassignment was pretextual. To establish its legitimate non-discriminatory reason, the PBSD attaches the affidavit and supplemental affidavit of Wanda Van Dyke, Assistant Superintendent of PBSD. (Doc. No. 22-8; Doc. No. 35, pp. 4–5) Ms. Van Dyke explains that it was best practice to have licensed teachers instructing upper-level math classes; and, for the 2019–2020 school year, Ms. Alexander was one of only three licensed math teachers at Pine Bluff High School.[8] The other two licensed math teachers, Ms. Margaret Whitman and Ms. Ryan Acker-Lewis, were also assigned to teach upper-level math classes that year. Ms. Whitman was the only teacher at Pine Bluff High School licensed to teach transitional math; and she taught two transitional math classes and four Algebra III classes. (Doc. No. 22-8, p. 3)

Ms. Acker-Lewis, who taught the calculus classes prior to 2019, was assigned as the lead math teacher for the 2019–2020 school year. As Ms. Alexander conceded, Ms. Acker-Lewis's position as lead teacher would require her to have three class periods when she was not teaching classes. (Doc. No. 31-1, pp. 8, 23) In addition to her lead teacher duties, Ms. Acker-Lewis taught two courses of Algebra II and two courses of

---

[8] The remaining math teachers received waivers from the Arkansas Department of Education allowing them to teach without a license. These teachers mostly taught the lower-level math classes of Algebra I and Geometry. One teacher taught Algebra II. (Doc. No. 22-8, p. 3)

quantitative literacy. (Doc. No. 22-8, p. 3) Ms. Alexander testified that she had never taught quantitative literacy and speculated that it "must be a new course." (Doc. No. 31-1, p. 23)

According to Ms. Van Dyke, Ms. Alexander was assigned to teach the upper-level calculus classes for the 2019–2020 school year based on the needs of the school district. In order to show that this reasoning was a pretext for retaliatory conduct, Ms. Alexander must present evidence that "(1) creates a question of fact as to whether [PBSD's] proffered reason was pretextual and (2) creates a reasonable inference that [PBSD] acted in retaliation." *Burkhart*, 603 F.3d at 477. This Court should not, and cannot, act as a "super–personnel department[] reviewing the wisdom or fairness of the business judgments made by [PBSD], except to the extent that those judgments involve intentional [retaliation]." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 916 (8th Cir. 2007) (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir.1995)).

In an attempt to meet her burden, Ms. Alexander argues that the last-minute reassignments were contrary to PBSD's policies; that Ms. Acker-Lewis should have continued to teach the calculus classes because she was experienced in teaching calculus; and that she had not received the training required by the Arkansas Department of Education to teach AP classes. (Doc. No. 28, pp. 11–14) The evidence shows, however, that, while PBSD policy discourages last-minute reassignments, they do happen at PBSD (Doc. No. 31-2, p. 8); and Ms. Alexander was qualified to teach calculus classes (Doc. No. 35; Doc. No. 36). In her response to the motion for summary judgment, Ms.

Alexander does not contest the fact that Ms. Acker-Lewis, as lead teacher, would not have been able to teach six calculus classes. Likewise, she does not contest the fact that Ms. Acker-Lewis began teaching quantitative literacy in 2019–2020, a new subject that Ms. Alexander was unfamiliar with.

Ms. Alexander points to the email that Dr. Nellums sent to all teachers shortly after the class reassignments were announced, advising teachers that they could ask for a transfer or choose to retire. Ms. Alexander assumes that this email was directed at her, but her subject belief is not enough to create a reasonable inference that the reassignment was retaliatory.

The evidence, viewed in the light most favorable to Ms. Alexander, is insufficient to permit a reasonable jury, without resorting to speculation, to draw the inference that Ms. Alexander's 2019–2020 class reassignment was based on her participation in, or support of, her daughter's 2016–2018 harassment lawsuit. Because the Court analyzes Ms. Alexander's Title VII and ACRA retaliation claims in the same manner, *Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 477 (8th Cir. 2010), summary judgment is appropriate on both Ms. Alexander's Title VII and ACRA retaliation claims.

### III.   Conclusion:

Defendant Pine Bluff School District's motion for summary judgment (Doc. No. 22) is GRANTED. Ms. Alexander's claims are DISMISSED, with prejudice.

SO ORDERED, 28th day of May, 2021.

_____
UNITED STATES MAGISTRATE JUDGE